# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEANNE VAN DUZER LANG BOYER, Individually and on Behalf of All Others Similarly Situated, <br><br>            Plaintiff, <br><br>     v. <br><br> ROBERT W. STEIN, CRUSADER SERVICING CORP., a Pennsylvania Corporation, ROYAL TAX LIEN SERVICES, LLC, a Pennsylvania Limited Liability Company, ROYAL BANCSHARES OF PENNSYLVANIA, Inc., a Pennsylvania Corporation, DAVID M. FARBER, DAVID BUTLER, CCTS, LLC, a New Jersey Limited Liability Company, CCTS TAX LIENS I, LLC, a New Jersey Limited Liability Company, CCTS TAX LIENS I, LLC, a New Jersey Limited Liability Company, DSBD, LLC, a New Jersey Limited Liability Company, JOHN DOES 1 through 10, CORPORATIONS 1 through 10, UNINCORPORATED COMPANIES 1 through 19, STEIN & ZEITZ, LLC, ISADORE MAY, WILLIAM A. COLLINS, RICHARD J. PISCOTTA, JR., INVESTORS 1 through 100, THE TOWNSHIP OF LEBANON,  a Municipal Corporation of the State of New Jersey, NEW JERSEY MUNICIPALITIES 1 through 100, MARY HYLAND, in her official capacity as Tax Collector of the Township of Lebanon, and NEW JERSEY PUBLIC OFFICIALS 1 through 100. <br><br>            Defendants. | Civ. No. 3:12-CV-01893-FLW-TJB |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PLAINTIFFS JEANNE VAN DUZER LANG BOYER AND MSC, LLC TO APPOINT INTERIM CLASS COUNSEL AND INTERIM LIAISON COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)**

---

**LITE DEPALMA GREENBERG**, LLC
Bruce D. Greenberg
Two Gateway Center, Suite 1201
Newark, NJ 07102-5003
Telephone: (973) 623-3000
Email: bgreenberg@litedepalma.com

*Proposed Liaison Counsel for Plaintiffs*

| | |
|---|---|
| RAYMOND V. CONTARINO, JR., Individually and on Behalf of All Others Similarly Situated, | Civ. No. 1:12-CV-01957-NLH-KMW |
| Plaintiff, | |
| v. | |
| M.D. SASS INVESTORS, SERVICES, INC., U.S. BANK, N.A., ROBERT STEIN, DAVID FARBER, DAVID BUTLER, WILLIAM COLLINS, ROBERT ROTHMAN, and JOHN DOES 1-100. | |
| Defendants. | |
| MSC, LLC, on behalf of itself and all others similarly situated, | Civ. No. 3:12-CV-02395-FLW-TJB |
| Plaintiff, | |
| v. | |
| WILLIAM A. COLLINS; DAVID M. FARBER; CHUN LI; ISADORE H. MAY; RICHARD J. PISCIOTTA, JR.; ROBERT E. ROTHMAN; ROBERT W. STEIN; DAVID BUTLER; STEPHEN E. HRUBY; CRUSADER SERVICING CORPORATION; ROYAL TAX LIEN SERVICES, LLC; CCTS, LLC; CCTS TAX LIENS I, LLC; CCTS TAX LIENS II, LLC; CCTS CAPITAL LLC; DSBD, LLC; PRO CAPITAL LLC; MICHAEL FABRIKANT & ASSOCIATES INC.; ROYAL BANCSHARES OF PENNSYLVANIA, INC.; ROTHMAN REALTY CORP.; M.D. SASS INVESTORS SERVICES, INC.; M.D. SASS TAX LIEN MANAGEMENT L.L.C.; M.D. SASS MUNICIPAL FINANCE PARTNERS – III, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – IV, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – V, LLC; AND M.D. SASS MUNICIPAL FINANCE PARTNERS – VI, LLC, | |
| Defendants. | |

| | |
|---|---|
| RONALD ENGLISH, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>CCTS, LLC; CCTS CAPITAL, LLC; CRESTAR CAPITAL, LLC; CCTS TAX LIENS I, LLC; CCTS TAX LIENS II, LLC; M.D. SASS ASSOCIATES, INC.; M.D. SASS INVESTORS SERVICES, INC.; M.D. SASS MUNICIPAL FINANCE PARTNERS – III, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – IV, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – V, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – VI, LLC; ISADORE MAY; RICHARD J. PISCIOTTA, JR.; STEPHEN E. HRUBY; ROBERT ROTHMAN; WILLIAM COLLINS; DAVID FARBER; ROBERT W. STEIN; ROYAL TAX LIEN SERVICES, LLC; MICHAEL FABRIKANT & ASSOCIATES INC.; ROYAL BANK AMERICA; ROYAL TAX LIEN SERVICES, LLC; CRUSADER SERVICING CORPORATION; ROYAL BANCSHARES OF PENNSYLVANIA, INC.; U.S. BANK, N.A.,<br><br>               Defendants. | Civ. No. 3:12-CV-2644-FLW-TJB |

| | |
|---|---|
| SAMUEL W. LEDFORD and LANA J.F. LEDFORD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT W. STEIN; ISADORE H. MAY; RICHARD J. PISCIOTTA, JR.; WILLIAM A. COLLINS; DAVID M. FARBER; ROBERT E. ROTHMAN; STEPHEN E. HRUBY; DAVID BUTLER; CRUSADER SERVICING CORPORATION; ROYAL TAX LIEN SERVICES, LLC; ROYAL BANCSHARES OF PENNSYLVANIA, INC.; CCTS, LLC; CCTS TAX LIENS I, LLC; CCTS TAX LIENS II, LLC; DSBD, LLC; M.D. SASS INVESTORS SERVICES, INC.; M.D. SASS TAX LIEN MANAGEMENT L.L.C.; M.D. SASS MUNICIPAL FINANCE PARTNERS – III, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – IV, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – V, LLC; AND M.D. SASS MUNICIPAL FINANCE PARTNERS – VI, LLC, and JOHN DOES 1-25 UNIDENTIFIED CO-CONSPIRATORS,<br><br>Defendants. | Civ. No. 3:12-CV-02869-FLW-TJB |

| | |
|---|---|
| T&B ASSOCIATES, INC., on behalf of itself and all others similarly situated,<br><br>                       Plaintiff,<br><br>                       v.<br><br>WILLIAM A. COLLINS; DAVID M. FARBER; CHUN LI; ISADORE H. MAY; RICHARD J. PISCIOTTA, JR.; ROBERT E. ROTHMAN; ROBERT W. STEIN; DAVID BUTLER; STEPHEN E. HRUBY; CRUSADER SERVICING CORPORATION; ROYAL TAX LIEN SERVICES, LLC; CCTS, LLC; CCTS TAX LIENS I, LLC; CCTS TAX LIENS II, LLC; CCTS CAPITAL LLC; DSBD, LLC; PRO CAPITAL LLC; MICHAEL FABRIKANT & ASSOCIATES INC.; ROYAL BANCSHARES OF PENNSYLVANIA, INC.; M.D. SASS INVESTORS SERVICES, INC.; M.D. SASS TAX LIEN MANAGEMENT L.L.C.; M.D. SASS MUNICIPAL FINANCE PARTNERS – III, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – IV, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS – V, LLC; AND M.D. SASS MUNICIPAL FINANCE PARTNERS – VI, LLC,<br><br>                       Defendants. | Civ. No. 3:12-CV-03010 -FLW-TJB |

**TABLE OF CONTENTS**

<u>**Page(s)**</u>

I.  INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS ......................................................................... 3

    A.  Municipal Taxes and Tax Sale Certificates ........................................ 3

    B.  Criminal Investigations....................................................................... 4

    C.  Filing of Civil Class Action Complaints.............................................. 5

III. LEGAL ARGUMENT................................................................................ 6

    A.  The Rule 23(g) Factors Strongly Support the Appointment of HBSS
        and Hausfeld as Interim Class Counsel in This Action ........................ 6

        1.  The standards under Rule 23(g) for selection of interim
           class counsel. ..............................................................................6

        2.  Hausfeld and HBSS best able to represent the interests of the Class. .........7

           a.  Hausfeld and HBSS have done more work in prosecuting
               this case than any other firm or group of firms..............................8

           b.  Hausfeld and HBSS have more experience in handling
               class actions, complex litigation and the claims asserted
               in this case, than any other firm.....................................................10

           c.  Hausfeld and HBSS have the finances and staffing needed
               to serve the class. ........................................................................18

        3.  The Rule 23(g) factors favor LDG as Interim Liaison Counsel ...............19

    B.  The Interim Class Counsel Structure Proposed By Plaintiffs Boyer and
        MSC Is Proportionate to the Nature, Scope and Likely Demands of the
        Litigation................................................................................................ 24

IV. CONCLUSION......................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Four in One Co. v. SK Foods, L.P.*
Nos. 2:08-cv-03017-MCE-EFB, 2009 WL 747160 (E.D. Cal. Mar. 20, 2009) .....................24

*In re Air Cargo Shipping Serv. Antitrust Litig.*
240 F.R.D. 56 (E.D.N.Y. 2006) ............................................................................................7

*In re Milestone Scientific Sec. Litig.*
187 F.R.D. 165 (D.N.J. 1999)............................................................................................24

*In re Mun. Derivatives Antitrust Litig.*
252 F.R.D. 184 (S.D.N.Y. 2008) .....................................................................................9, 10

*In re Nice Sys. Sec. Litig.*
188 F.R.D. 206 (D.N.J. 1999).............................................................................................24

*New York v. Hendrickson,*
840 F.2d 1065 (2d Cir. 1988) ...........................................................................................11

*Nowak v. Ford Motor Co.,*
240 F.R.D. 355 (E.D. Mich. 2006) ......................................................................................7

*Vincelli v. Nat'l Home Health Care Corp.*
112 F. Supp. 2d 1309 (M.D. Fla. 2000)...............................................................................24

### STATUTES

N.J.S.A. 54:5-63.1...............................................................................................................8

### OTHER AUTHORITIES

Fed. R. Civ. P. 23(g) ........................................................................................... *Passim*

Fed. R. Civ. P. 23(g)(1) ......................................................................................................7

Fed. R. Civ. P. 23(g)(1)(C) ...............................................................................................18

Fed. R. Civ. P. 23(g)(3) ......................................................................................................6

MANUAL FOR COMPLEX LITIGATION, FOURTH (2004) ...................................................7

## I.      INTRODUCTION

This is a class action for, among other things, violations of the Sherman Act, arising out of the defendants' alleged illegal conspiracy to rig bids and allocate markets in connection with the auction of tax sale certificates ("TSCs") in the State of New Jersey.  The Antitrust Division of the United States Department of Justice ("DOJ") has been conducting a criminal investigation into the activities of the defendants and, to date, as further described below, nine defendants have agreed to plead guilty to violating the Sherman Act.

Pursuant to Judge Bongiovanni's May 22, 2012 Letter Order [Docket Entry No. 41 in *Boyer v. Robert Stein, et al.*, 3:12-CV-1893-FLW-TJB] ("Letter Order"), movants Jeanne Van Duzer Lang Boyer and MSC, LLC respectfully request that the Court appoint their primary counsel – Hausfeld LLP ("Hausfeld") and Hagens Berman Sobol Shapiro LLP ("HBSS") – as interim class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and Lite DePalma Greenberg LLC ("LDG") as interim liaison counsel.[1]  In selecting interim class counsel, Rule 23(g) requires that the Court consider:

> (i)     The work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action;
>
> (iii)   Counsel's knowledge of the applicable law; and

---

[1]     On April 27, 2012, plaintiff MSC, LLC filed a Motion to Consolidate Actions and to Appoint Interim Class Counsel Pursuant to Fed. R. Civ. P. 23(g).  [*See* Docket Entry No. 4 in *MSC, LLC v. William A. Collins, et al.*, 03:12-CV-02395-FLW-TJB].  That motion was terminated by Judge Bongiovanni.  [*See* Docket Entry No. 23 in *MSC, LLC v. William A. Collins, et al.*, 03:12-CV-02395-FLW-TJB].  Further, the parties have agreed to consolidate all six related actions captioned above mooting the portion of MSC's motion seeking consolidation.  As a result of the extensive discussions that counsel for plaintiffs Boyer and MSC have had since the filing of MSC's motion above, they believe that the interests of the class will be best served by the appointment of HBSS and Hausfeld as interim class counsel and LDG as liaison counsel.

(iv)     The resources that counsel will commit to representing the class.

The Rule 23(g) factors decisively favor the appointment of HBSS and Hausfeld as interim class counsel and LDG as interim liaison counsel here.  First, as set forth in the Berman and Hausfeld Declarations,[2] no other firm, or sets of firms, have done more to investigate and prosecute this case than HBSS, Hausfeld, LDG and their co-counsel.

Second, while certain other firms may also be reputable and qualified to act as class or liaison counsel, the fact remains that HBSS, Hausfeld and LDG, collectively, have hundreds of years of experience in litigating antitrust class actions and other complex litigations and likely have more experience in litigating such actions than all other potential lead counsel firms combined.  As a result, their knowledge of the applicable law is unsurpassed.

Third, HBSS, Hausfeld and LDG, given their extensive experience in representing plaintiffs in class action litigations, are aware of the resources required to prosecute such a case (potentially thousands of hours of attorney time and millions of dollars in expenses) and are prepared to contribute that level of resources in this case in order to achieve a successful outcome.

Finally, HBSS, Hausfeld and LDG believe that given the size of this case, a two firm interim class counsel structure with one liaison counsel would be the most efficient representation of the class and most likely to avoid inefficiency and duplicative effort.  Thus, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, plaintiffs Boyer and MSC

---

[2]     "Berman Declaration" and "Hausfeld Declaration" refer respectively to the June 8, 2012 Declarations of Steve W. Berman and Michael D. Hausfeld In Support of the Motion of Plaintiffs Jeanne Van Duzer Lang Boyer and MSC, LLC to Appoint Interim Class Counsel and Interim Liaison Counsel Pursuant to Rule 23(g) being filed concurrently herewith.

respectfully request that Hausfeld and HBSS be appointed as interim class counsel and LDG as interim liaison counsel.

## II.      STATEMENT OF FACTS

### A.     Municipal Taxes and Tax Sale Certificates

Virtually every property owner in the State of New Jersey is required to pay certain property taxes and other municipal charges (such as sewer or water charges) to the municipality in which such property is located.  MSC Complaint, ¶ 40.[3]  New Jersey state law provides that all such taxes on real property operate as a continuous lien on the property, and all subsequent taxes, interests, penalties and costs of collection be added to and become part of such lien.  *Id*. at ¶ 41.  This lien is superior to all other interests in the real property, including any lien that any mortgagor has on the property.  *Id*.

At least once per year, each of New Jersey's approximately 566 municipalities is required to hold an auction at which the municipality auctions each delinquent tax obligation to potential investor buyers.  *Id*. at ¶ 42.  The delinquent tax obligation that is auctioned and purchased by investors is referred to as a "tax sale certificate" or "TSC."  *Id*.  The winning bidder at the auction acquires the municipality's lien on the real property at issue, and possesses the right to receive the principal amount owed, along with interest and penalties.  *Id*. at ¶ 43.  If after a certain period of time the property owner does not satisfy or "redeem" the lien, the TSC holder has the right to foreclose on the real property and collect the monies associated with the lien.  *Id*.

Pursuant to the New Jersey statutes that govern the auctioning of TSCs, the bidding on the delinquent obligation being auctioned opens with the interest rate on the delinquent

obligation at 18%. *Id.* at ¶ 44. Unlike in a traditional auction, each subsequent bid in a TSC auction lowers the interest rate. Indeed, the entire premise of the New Jersey statutory scheme is that the auction should result in a competitive process where bidders drive *down* the opening interest rate of 18%; in many truly competitive cases, for example, the interest rate is driven down to close to zero percent. *Id.* Even at zero percent interest, the TSC holder still may receive penalties of between 2-6% from the delinquent property owner and has a first priority lien on the real property at issue. *Id.* Thus, in a competitive market, auctions that result in the winning bid at 18% interest are supposed to be the exception (if they occur at all) and not the rule. *Id.*

Since at least as early as 1998, however, the defendants and other unnamed co-conspirators sought to ensure that the TSCs they purchased at the auctions carried (at or near) the maximum 18% interest rate. *Id.* at ¶ 45. In order to do so, the defendants entered into a combination and/or conspiracy to rig various TSC auctions. *Id.* Specifically, the defendants, who are among the largest TSC purchasers in New Jersey, agreed to allocate the various delinquent tax obligations and refrain from bidding on others so that there would be no competition with respect to the obligations being auctioned. *Id.* As a result of the defendants' illegal agreement, the opening bid at 18% interest would often end up being the only bid, and therefore, the auction would result in the winning bidder having the right to 18% interest on the delinquent tax obligation. *Id.*

**B.      Criminal Investigations**

Beginning in 2011 and possibly earlier, the Antitrust Division of the United States Department of Justice began a criminal investigation into the market for the auction of TSCs in

---

[3] "MSC Complaint" refers to the April 20, 2012 complaint captioned *MSC, LLC v. William A. Collins, et al.*, Civ. No. 3:12-CV-02395-FLW-TJB (D.N.J.). Most, if not all, of the other

New Jersey.  *Id.* at ¶ 52.  According to the DOJ's website, the investigation is being conducted by the Antitrust Division's New York Field Office and the Federal Bureau of Investigation's Atlantic City, New Jersey office.  *Id.*

To date, the DOJ investigation has resulted in the following defendants agreeing to plead guilty to the illegal conspiracy alleged regarding the sale of TSCs in New Jersey:  (1) William A. Collins; (2) David M. Farber; (3) Isadore H. May; (4) Richard J. Pisciotta, Jr.; (5) Robert E. Rothman; (6) Robert W. Stein; and (7) Stephen E. Hruby.  *See* ¶¶ 53-79 of the MSC Complaint. In addition, on April 24, 2012, two additional defendants – David Butler and an entity under his control, DSBD, LLC, both of which were named as defendants in the Boyer and MSC complaints – also agreed to plead guilty to the same violations.  *See* http://www.justice.gov/atr/public/press_releases/2012/282510.htm.  As part of their guilty pleas, they have each admitted to participating in the alleged conspiracy at various times from 1998 through 2009.

## C.    Filing of Civil Class Action Complaints

On Ms. Boyer's behalf, and on behalf of all others similarly situated, attorney Michael R. Perle, Hausfeld's co-counsel in this case, filed the first of these actions on March 13, 2012 in New Jersey state court, alleging that various defendants rigged bids and allocated markets in connection with the auction of tax sale certificates in the State of New Jersey.

complaints filed in this matter contain similar allegations.

The class action Ms. Boyer brought was removed to this Court on March 28, 2012.[4]  Mr. Perle subsequently enlisted Hausfeld to serve as co-counsel on Ms. Boyer's behalf.  Following removal, five other class actions were brought alleging essentially the same scheme to rig bids and allocate markets for TSCs in New Jersey, including the complaint HBSS filed on behalf of MSC on April 20, 2012, which included allegations against the defendants for violating federal antitrust laws.  Complaints were also filed on behalf of plaintiffs English, Ledford, T&B Associates and Contarino.

### III.    LEGAL ARGUMENT

**A.    The Rule 23(g) Factors Strongly Support the Appointment of HBSS and Hausfeld as Interim Class Counsel in This Action**

**1.    The standards under Rule 23(g) for selection of interim class counsel.**

Pursuant to Fed. R. Civ. P. 23(g)(3), this Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  In doing so, the factors to be considered focus on the work counsel has done in investigating and identifying the claims, counsel's experience and the resources that counsel can bring to bear.  Thus, a court:

> ***must*** inquire into the work counsel has done in investigating and
> identifying the particular case; counsel's experience in handling
> class actions, other complex litigation, and claims of the type
> asserted in the action; counsel's knowledge of the applicable law;

---

[4]    Counsel for Contarino have expressed concern about the lack of a federal antitrust claim in the first-filed action Ms. Boyer brought against the defendants in state court in New Jersey, which was subsequently removed to this Court.  The absence of a Sherman Act claim in Boyer's complaint is a non-issue, however. The consolidated complaint, which interim class counsel will ultimately file, will include a Sherman Act claim, potentially along with other federal and state claims.  Although it has long been prepared, Hausfeld and its co-counsel have not filed an amended complaint on behalf of Ms. Boyer and other proposed class representatives including federal claims out of deference to the Court's Letter Order.

> the resources counsel will commit to representing the class; and
> any other factors that bear on the attorney's ability to represent the
> class fairly and adequately.

MANUAL FOR COMPLEX LITIGATION, FOURTH (2004), ¶ 21.271. [Emphasis supplied].

While neither Rule 23(g) nor the Advisory Committee Notes explicitly states the standards to be applied in choosing interim class counsel, courts have held that the same factors that apply in choosing class counsel at the time of class certification (the standards set forth in Fed. R. Civ. P. 23(g)(1)) apply in choosing interim class counsel. *See*, *e.g.*, *In re Air Cargo Shipping Serv. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ("Although neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Fed. R. Civ. P. 23(g)(1)(A) and (B), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification").  Finally, a court has the discretion and authority to appoint more than one firm to act as co-lead counsel. *See*, *e.g.*, *In re Air Cargo Shipping*, 240 F.R.D. at 58-59 (appointing four law firms as co-lead counsel); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006) (appointing two law firms as interim co-lead counsel and separate firm as interim liaison counsel).

As discussed below, these considerations provide compelling support for the appointment of Hausfeld and HBSS as interim class counsel and LDG as liaison counsel.

**2.       Hausfeld and HBSS are best able to represent the interests of the Class.**

With their unparalleled combination of experience and resources, as set forth below, HBSS and Hausfeld have demonstrated that they are best able to represent the class in this case.

         **a.**     **Hausfeld and HBSS have done more work in prosecuting this case than any other firm or group of firms.**

No other firm or group of firms has done more to advance this litigation on behalf of their clients and the class than Hausfeld, HBSS and their co-counsel, even before the litigation was filed.  Because innocent victims of this conspiracy are at risk of losing their property as a result of the illegal tax sale certificate issued with respect to their property,[5] Hausfeld, HBSS, LDG (and their co-counsel) have been hard at work to advance this litigation while it is in these beginning stages related primarily to the form and sufficiency of the pleadings.  Hausfeld and HBSS, along with their co-counsel, have both expended considerable time and effort to advance this litigation in these early stages.  As set forth in the Berman and Hausfeld Declarations, such efforts have already uncovered important facts underlying the conduct alleged as well as the identities of additional defendants and will be invaluable in further prosecuting this case.

     Counsel for Hausfeld, HBSS and their co-counsel investigated the facts underlying this case for several months, developing the information that would allow Hausfeld's co-counsel to file the very first of these cases.  *See* Hausfeld Declaration, ¶¶ 12-13.  Nor did their investigative efforts end with the filing of the early complaints in this case.  The investigation to date has included interviews with over fifteen potential class members, the review of dozens of tax lien auctions, and discussions with industry insiders familiar with New Jersey's tax lien market.  *See* Hausfeld Declaration, ¶¶ 12-13; Berman Declaration, ¶¶ 7-8.  In a further effort to uncover

---

[5]    Under the New Jersey Tax Lien laws (*see*, *e.g.*, N.J.S.A. 54:5-63.1), anyone who seeks "excessive charges and fees" in connection with a tax sale certificate may be required to forfeit the certificate and the certificate would then revert to the property owner.  To the extent that defendants seek to foreclose on properties on which a tax sale certificate has been issued that was the subject of the conspiracy, the certificate may be invalid and subject to forfeiture.  Thus, in that regard, because class members may be subject to irreparable harm, it is imperative this litigation move as expeditiously as possible – something plaintiffs Boyer and MSC (and their proposed class counsel and liaison counsel) are fully prepared to do.

details of the conspiracy, HBSS and Hausfeld have issued a subpoena on the National Tax Lien Association ("NTLA"), a trade association based in Florida that represents the interests of those involved in the purchase and sale of tax liens such as the tax sale certificates at issue in this case, and which is dominated by one or more defendants.  *See* Hausfeld Declaration, ¶ 14; Berman Declaration, ¶10.

Over the last several months, Hausfeld and HBSS have uncovered additional: (i) information on conspiracy participants; (ii) details on many of the auctions that were rigged and in which the defendants participated that involved improper conduct; (iii) details on many of the tax sales that involved improper conduct; and (iv) details regarding the economics of the industry, which can be used to assist with the development of a comprehensive damages model for the class; and (v) information concerning the scope of alleged unlawful behavior including potential collusive conduct occurring in other states.

In addition, counsel for Boyer and MSC, including Hausfeld, HBSS and LDG, have engaged in settlement discussions with select defendants.  As described in the Hausfeld Declaration, these discussions have already provided meaningful information that will assist the class in further prosecuting this action against other defendants.[6]

---

[6] Engaging in such settlement negotiations, is more than appropriate, particularly where here, such discussions began prior to the filing of most, if not all the cases filed after Ms. Boyer's case.  Indeed, such discussions demonstrate the qualifications of the counsel so engaged – including Hausfeld and HBSS – to be appointed interim class counsel.  *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel firms – including Hausfeld - who reached settlement agreement with defendants prior to a lead counsel appointment because, *inter alia*, settlement discussions demonstrated that the firms "have a substantial history of investigating the potential claims in this action").

**b.     Hausfeld and HBSS have more experience in handling class actions, complex litigation and the claims asserted in this case, than any other firm.**

Hausfeld and HBSS – with their nearly combined 80 attorneys nationwide – collectively have more experience in antitrust class action litigation than any other plaintiffs' firm here, and likely all other plaintiffs' firms combined.  Courts throughout the country have demonstrated their confidence in Hausfeld and HBSS by selecting them as class counsel in dozens of antitrust class actions (in addition to other types of class action litigation such as securities, consumer fraud, mass torts, human rights and other types of class actions).  In addition, Hausfeld and HBSS have achieved significant results in those cases.  A more complete listing of the cases in which Hausfeld and HBSS have been selected as class counsel and the results achieved can be found in each of the firm's resumes attached as Exhibit A to the Berman and Hausfeld Declarations.

Not only do Hausfeld and HBSS likely have more collective experience litigating "antitrust" cases (the primary claim being asserted here)[7] than all other firms combined, they also likely have more experience litigating the type of antitrust violations at issue here – bid rigging.  Currently, Hausfeld is co-lead counsel in what is likely the largest bid-rigging case in history – *In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950, Master Docket No. 08-2516 (S.D.N.Y.).  Further, HBSS is currently playing leadership roles in several other large

---

[7]     Regardless of the claims ultimately asserted here in an amended pleading, Hausfeld and HBSS are more than qualified to assert and prosecute any type of valid claim here.  For example, HBSS has prosecuted some of the largest class actions involving RICO – the claim asserted by plaintiff Contarino.  HBSS recently obtained a $142 million jury verdict in an off-label marketing case against Pfizer brought under RICO.  HBSS was also lead counsel in another RICO case against pharmaceutical wholesaler McKesson Corporation and drug pricing company First DataBank.  The case against McKesson settled for $350 million on the eve of trial and the settlement against First DataBank resulted in a four percent "rollback" on the prices of 95% of

antitrust cases involving bid rigging, for example, in *In re Optical Disk Drives Antitrust Litig.*, 11-MD-2293 (N.D. Cal.) (HBSS is co-lead counsel and Hausfeld serves on an executive committee).  Jason Zweig also played a prominent role in a New Jersey-area bid-rigging case captioned *In re Linens Antitrust Litig.*, 03-7823 (S.D.N.Y.) which involved customer allocation and bid rigging in the market for table linens and napkins at restaurants in the New York Metropolitan area including in New Jersey.  The litigation resulted in a settlement exceeding $11 million.[8]

In addition to their firm resumes, the following is a brief description of the HBSS and Hausfeld firms, their relevant experience in antitrust cases, and the background of the attorneys who will be primarily responsible for the litigation at their respective firms.

**<u>HBSS</u>**

HBSS is a fifty-five lawyer firm, with offices in New York, Seattle, Washington D.C., Boston, Chicago, Berkeley, Los Angeles, Phoenix, Minnesota and Colorado.  Since its founding in 1993, HBSS has represented plaintiffs in a broad spectrum of complex, multi-party antitrust cases.  The firm has been recognized in courts throughout the United States for its ability and experience in handling major complex litigation.  A more thorough description of the firm and its lawyers can be found in the firm's resume which is Exhibit A to the accompanying Berman Declaration.

---

the nation's retail branded drugs, resulting in billions of dollars of savings.  Similar cases on behalf of government entities have resulted in additional recoveries exceeding $94 million.

[8]    In addition to the experience of Mr. Berman, Mr. Zweig and Ms. Connolly, one of HBSS' partners, George W. Sampson, who was Chief of the Antitrust Bureau of the Attorney General for the State of New York for 10 years, was lead trial counsel in a landmark bid-rigging case – *New York v. Hendrickson*, 840 F.2d 1065 (2d Cir. 1988) – in which he obtained a $7.8 million jury verdict which was upheld on appeal.  *Id.*

HBSS will devote the resources necessary to aggressively prepare this case for trial, as it does in every case. To do so, it will rely on at least three of the firm's many experienced antitrust litigators and trial lawyers, including:

- **<u>Steve Berman</u>**

Mr. Berman helped start the firm in 1993, and is the managing partner resident in its Seattle office. He has served as lead or co-lead counsel in antitrust, securities, consumer, products liability, employment class actions, and complex litigations throughout the country, including MDL actions throughout the country. For example, Mr. Berman was the lead trial lawyer in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.). He tried the class case against four manufacturers and successfully argued the appeal from the trial before the First Circuit. Mr. Berman was also the lead counsel in *New England Carpenters v. First DataBank, et al.*, No. 05-11148-PBS (D. Mass.), on behalf of a nationwide class of private payors that purchased prescription brand name drugs. Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start. Mr. Berman was also lead counsel *In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 (N.D. Cal.), a recent securities class action before the Honorable William Alsup, United States District Court, Northern District of California, that settled while arguing *in limine* motions for approximately $235 million or a 42.5% recovery for the federal class and an 80% recovery for the California class, once again on the eve of trial.

Recently, in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 8:10ML2151 JVS (FMOx) (C.D. Cal.), Judge James V. Selna *sua*

*sponte* identified Mr. Berman as a presumptive co-lead counsel when Judge Selna was assigned the Toyota MDL.

Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark Tobacco Litigation. That case resulted in the largest settlement in history, a settlement that occurred while Mr. Berman was in trial in *State of Washington v. Philip Morris, et al.*

- **Jason Zweig**

Mr. Zweig is Of Counsel and operates HBSS' New York office. Mr. Zweig joined HBSS after spending nearly eight years at the New York office of Kaplan Fox & Kilsheimer LLP where he focused almost exclusively on plaintiff antitrust class action litigation. Mr. Zweig was a member of the trial team in *High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.) ($531 million settlement on the eve of trial). Mr. Zweig also played significant roles in the following antitrust litigations: *Hydrogen Peroxide Antitrust Litig.*, MDL No. 1682 (E.D. Pa.) (nearly $100 million recovered); *Plastics Additives Antitrust Litig.*, No. 03-CV-2038 (E.D. Pa.) ($46.8 million recovered); *NBR Antitrust Litig.*, No. 03-CV-1898 (W.D. Pa.) (recovered $34.3 million); and *Linens Antitrust Litig.*, No. 03-CV-7823 (S.D.N.Y.) (recovered approx. $11 million in antitrust class action case involving market allocation and bid rigging). Mr. Zweig has also participated in numerous and other class actions and was previously appointed by this Court to serve as a member of the Class Counsel Advisory Committee in *Moore et al. v. Cellco Partnership d/b/a Verizon Wireless*, 09-4592-FLW-TJB (D.N.J.) (case was part of *In re Verizon Wireless Data Charges Litig.*, 3:10-CV-01749-FLW-LHG) (*see* Dkt. No. 32), a case in which

the Court recently gave final approval to a class settlement.  During law school, Mr. Zweig was a judicial intern to the Honorable Jed S. Rakoff.

- **Jennifer Fountain Connolly**

Ms. Connolly is Of Counsel at HBSS where she operates the firm's DC office.  Her practice focuses on pharmaceutical pricing fraud cases, *qui tam* litigation and antitrust class actions.  Ms. Connolly's experience includes holding leadership positions in numerous complex class actions.  She had a significant role in litigation against McKesson Corporation which resulted in a $350 million settlement that alleged the company engaged in a scheme that raised the prices of over 400 brand-name prescription drugs.  Ms. Connolly was also a key member of the HBSS-led team that successfully tried the AWP litigation against four pharmaceutical company defendants, obtaining a verdict that was subsequently affirmed in all respect by the First Circuit Court of Appeals.  Ms. Connolly is a 1998 graduate of the University of Denver College of Law and graduated from the University of Chicago in 1993 with High Honors and Special Honors in English.  She is admitted to the bar in Colorado and Illinois.

Additionally, attached as Exhibit A to this memorandum is a chart showing recent antitrust class action matters in which HBSS has played or is currently playing a leadership role.

## Hausfeld

Hausfeld is widely acknowledged to be one of the nation's preeminent antitrust litigation firms.  With 23 attorneys at offices in Washington, DC; Philadelphia, PA; and San Francisco, CA (as well as eight more lawyers in the firm's London office), the firm's lawyers have achieved successful – and in many cases precedent-setting – legal decisions on behalf of clients involved

in complex cases around the world. As a result of the firm's high caliber legal work in the antitrust field, for example, *The Legal 500* has ranked Hausfeld LLP as one of its "Tier 1" law firms in the plaintiffs' antitrust class action category for the last three years. Most recently, in 2012, *The Legal 500* noted that the firm "has 'a deep and strong knowledge of the antitrust practice', and is recognized as 'among the very top' firms in the space." Indeed, three of the ten "Leading Lawyers" that The Legal 500 ranks in the category are from Hausfeld LLP (including Michael Hausfeld) – no other firm on the "Leading Lawyers" list had more than one.

The *2012 Benchmark Plaintiff Guide to America's Leading Plaintiff Firms and Attorneys* has similarly identified Hausfeld LLP as one of the country's "Tier 1" Antitrust firms, naming four Hausfeld LLP partners as "Antitrust Litigation Stars," (out of sixteen in the entire country) including two who will be actively involved in this case (Michael D. Hausfeld and James J. Pizzirusso). The firm was also named in the 2010 *National Law Journal*'s "Plaintiffs' Hot List," which noted that "Hausfeld [is] a leader in antitrust and class action litigation . . . establish[ing] new frontiers for plaintiffs' legal recovery, while pursuing global cartels and representing victims of apartheid." The *Global Competition Review* has also recently stated that Hausfeld LLP "is clearly recognized as one of the best plaintiffs firms in the country." The firm currently serves in leadership positions in approximately 25 major antitrust class actions, more than any other firm seeking leadership in this case.

- **Michael Hausfeld**

Michael D. Hausfeld is the name partner, founder and Chairman of Hausfeld LLP. His career has included some of the largest and most successful class actions in the fields of consumer protection, antitrust law and human rights. The *National Law Journal* has recognized

him as one of the "Top 100 Influential Lawyers in America" and the *Legal Times* named Mr.
Hausfeld among the top 30 "Visionaries" in the Washington legal community in 2008.  The *New
York Times* referred to Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers,"
and in 2009 the *Washingtonian* named him one of thirty "Stars of the Bar."  *Global Competition
Review* has reported that he "consistently brings in the biggest judgments in the history of law"
and that he is "a Washington lawyer determined to change the world – and succeeding."  The
*Legal 500* consistently lists Mr. Hausfeld as one of the leading plaintiffs' antitrust lawyers in the
country, stating that "[t]he outstanding Mike Hausfeld is a titan of the antitrust bar."  Mr.
Hausfeld's vision and influence is international in scope.  Recently, he was named as co-chair of
the ABA Section of Antitrust Law's Civil Redress Task Force.  The Task Force brings together
antitrust practitioners and members of the judiciary in the U.S. and Europe to examine questions
being raised as to private enforcement of competition laws internationally.  The Task Force aims
to become a center for information and policy-shaping of private antitrust enforcement around
the world.

Mr. Hausfeld is also noted as one of the country's leading settlement negotiators.  For
example, he successfully negotiated the first-ever private settlement of a company's global
liability in connection with a price-fixing cartel and is one of thirty negotiators profiled in a book
entitled, *Done Deal: Insights from Interviews with the World's Best Negotiators*, by Michael
Benoliel, Ed.

- **James Pizzirusso**

Hausfeld LLP partner James J. Pizzirusso focuses his practice on antitrust and consumer
protection cases.  Among other matters, Mr. Pizzirusso's most recent antitrust work includes

representing clients who allege price fixing and collusion in *In re Processed Egg Products Antitrust Litig.* (E.D. Pa.) ($25 million settlement with one defendant pending) and *Brigiotta's Farmland Produce and Garden Center, Inc. v. United Potato Growers of Idaho* (D. Idaho) (alleging nationwide supply reduction and price fixing conspiracy in the potato industry).  He is also actively involved in antitrust litigation involving dairy farmers in the Southeast region set to go to trial this year and where one defendant has already settled for $140 million.  He currently serves as Vice Chair of the American Bar Association's "Trade, Sports and Professional Associations" Antitrust Committee.  In 2012, he was named by the *Benchmark Plaintiffs' Guide* as one of the top sixteen antitrust lawyers in the country, as well as a "local litigation star" for Washington, DC.

　　　As the head of Hausfeld LLP's Consumer Protection practice group, Mr. Pizzirusso has also been appointed co-lead counsel in *In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.* (D. Md.) ($8 million nationwide settlement) and *Radosti v. Envision EMI, LLC*, (D.D.C.) ($17.5 million nationwide settlement).  He is currently serving as one of the lead counsel in *Wolph v. Acer America, Inc.* (N.D. Cal.) and *In re PS3 "Other OS" Litigation* (N.D. Cal.).  He was also recently involved in *Pelletz v. Advanced Environmental Recycling Technologies, Inc.* (W.D. Wa.) and *Ross v. Trex, Inc.* (N.D. Cal.) – both of which resulted in nationwide settlements on behalf of owners of defective decking materials.  In 2012, Mr. Pizzirusso was named as one of four "Rising Stars under 40" by Law360 in Consumer Protection law.  Mr. Pizzirusso is also the author of several published papers, and has served as a Visiting Professor at George Washington University Law School.

- **Seth Gassman**

Seth R. Gassman, Of Counsel at Hausfeld LLP, has nearly a decade of antitrust litigation and regulatory experience.  He has represented clients and classes in many different industries over the course of his career, including in finance, manufacturing and technology.  Mr. Gassman currently specializes in representing victims of domestic and international anticompetitive conduct.  Among his current cases, he is litigating *In re Polyurethane Foam Antitrust Litig.* and *In re Blood Reagents Antitrust Litig.*  Mr. Gassman has also published several articles on antitrust law and class actions, including an article that addresses litigating a civil antitrust class action while a criminal investigation is also underway.

      c.      **Hausfeld and HBSS have the finances and staffing needed to serve the class.**

A court appointing interim class counsel should include in its consideration the resources that counsel will commit to representing the Class.  Fed. R. Civ. P. 23(g)(1)(C).  Both Hausfeld and HBSS, with a combined total of over 80 lawyers, numerous support staff, and over a dozen offices, have the resources and staffing needed to competently prosecute this case.

In addition to the qualifications of Hausfeld, HBSS and LDG, the other firms supporting the leadership structure are eminently qualified attorneys in their own right who have worked to develop and prosecute this litigation, but who have agreed that the collective experience and resources of Hausfeld and HBSS will best represent the interests of the class:

- **Michael Perle**.  Mr. Perle worked with Ms. Boyer to develop the first civil complaint to allege the conspiracy at the heart of this case.  His work has included discussions with industry insiders and over fifteen additional potential class representatives, as well as an extensive review of tax sale certificate auction records.  He has also helped Ms. Boyer and other potential class members get injunctions against defendants who hold tax sale certificates that were purchased pursuant to the alleged conspiracy.

- **Williams, Cuker & Berezofsky** ("WCB") also supports the structure.  WCB has extensive experience handling complex plaintiff litigation, in both class action and individual contexts, and has regularly taken lead roles in cases in New Jersey and around the country.  Mark Cuker, who has and will be focusing on this case for the firm, has particular expertise in New Jersey.

- **Starr, Gern, Davison & Rubin, P.C.**  The Starr Gern firm, based in New Jersey, is one of the state's leading law firms, including in the representation of plaintiffs in litigation, also supports the structure. Amos Gern, one of Starr Gern's named partners, is one of the state's top trial attorneys and has secured some of the largest verdicts in New Jersey state court.

- **The Wolf Law Firm LLC.**  The Wolf Law Firm, also based in New Jersey, supports the structure.  Andy Wolf, named partner at the Wolf Law Firm, is one of New Jersey's most recognized lawyers representing injured consumers in the state of New Jersey.  He has extensive experience in litigating and leading class actions.  He has been involved in this specific litigation working with Ms. Boyer's counsel since the beginning of that litigation.

### 3.      The Rule 23(g) factors favor LDG as Interim Liaison Counsel

LDG, headquartered in Newark, New Jersey, and with offices in Philadelphia and Chicago, has extensive litigation experience in the federal courts, especially in the District of New Jersey, and an established reputation as the pre-eminent New Jersey firm for litigation of complex class actions.  LDG's client roster spans many industries and initiatives, ranging from major companies to the State of New Jersey's Division of Investment to individuals and smaller New Jersey businesses.  A significant portion of LDG's practice is by association with other lawyers, and the firm has worked closely with the most successful class action plaintiffs' firms such as Hausfeld and HBSS.

In fact, LDG has worked with both Hausfeld and HBSS on cases for many years.  The joining of these firms is not a courtship of convenience or marriage of recent vintage, but a very long-standing relationship built on the knowledge of, and respect for, the abilities of one another.

Three LDG attorneys – Allyn Z. Lite, Bruce D. Greenberg and Steven J. Greenfogel– primarily will be tasked with performing the responsibilities of interim liaison counsel, as well as performing work on the substantive antitrust issues as assigned by interim class counsel.  Those attorneys, whose backgrounds are further described below and in LDG's firm resume, are uniquely qualified for this role.

- **<u>Allyn Z. Lite</u>**

Mr. Lite, LDG's senior member, concentrates on class action and complex commercial litigation.  He was designated by the Judges of the United States District Court for the District of New Jersey as Clerk of that Court from 1982 to 1986.  While in that position, Mr. Lite created the Court's alternative dispute resolution program and served on and was Reporter for the committee that drafted the current Local Rules of the United States District Court for New Jersey.  He participated as one of ten original members of the United States District Court Lawyer's Advisory Committee, on which he served for eleven years.

Mr. Lite is the author of *New Jersey Federal Practice Rules* (Gann Law Books 2012), a commentary and annotations to the United States District Court's Local Rules, now in its 22nd annual edition. Among his other publications is his co-authorship, with Bruce D. Greenberg, of the chapter entitled "Class Action Litigation" in *New Jersey Federal Civil Procedure* (New Jersey Law Journal Books 1st ed. 1999, 2nd ed. 2008, and annual supplements).

Mr. Lite has over 25 years of class action experience.  He has served as lead, co-lead, liaison counsel, court-appointed claims administrator, and as an expert witness on attorneys' fees in over 100 cases.  Mr. Lite is currently serving in the District of New Jersey as counsel for one of the defendants in *In re Effexor Antitrust Litig.*, Civil No. 3:11-cv-05590-JAP.

Mr. Lite and LDG were appointed as co-lead counsel for the State of New Jersey, Division of Investment in *Newton v. Tenet Healthcare Corp.*, cv-02-8462-RSWL (C.D. Cal.) ($281.5 million settlement); *In re Motorola Securities Litig.*; Civ. No. 03-C-287 (N.D. Ill.) ($193 million settlement reached three business days before trial); *State of New Jersey v. Sprint Corporation*, Civil No. 03-2071-JWL (D. Kan.); and *In re STEC Inc. Securities Litig.*, cv-09-1304 (JVS) (C.D. Cal.) (ongoing).[9]

Mr. Lite served on the Lawyers' Advisory Committee for the United States Court of Appeals for the Third Circuit from 1992 through 1994 and as a member of the Third Circuit Task Force on Equal Treatment in the Courts, Gender Commission.  He also chaired the United States District Court's Merit Selection Panel to recommend candidates for a newly authorized United States Magistrate Judge position assigned to Newark, New Jersey.  In addition to many years of service on the Board of Trustees of the Association of the Federal Bar of New Jersey, Mr. Lite was co-chair for four years of the New Jersey State Bar Association's Class Action Committee and served as Chair of the District VA Ethics Committee.

- **Bruce D. Greenberg**

Mr. Greenberg has practiced law for nearly 30 years and has handled complex antitrust,

---

[9] Mr. Lite has also played an active role in many other cases, including *In re Bristol-Myers Squibb Securities Litig.*, Civil Action No. 00-1190 (SRC) (D.N.J) (liaison counsel) ($185 million settlement plus corporate governance reforms);  *In re Nazi Era Cases Against German Defendants Litig.*, Civil Action No. 98-4104 (WGB) (D.N.J.) (liaison counsel) ($5.2 billion settlement); *In re Prudential Insurance Company of America Sales Practices Litig.*, Master File No. 95-4704 (AMW) (D.N.J.) (liaison counsel) (settlement worth over $4 billion); *Chin v. Chrysler Corporation*, Civil Action No. 95-5569 (JCL) (D.N.J.) (co-lead counsel) (catalyst for $53 million in relief to class); *Weiss v. Mercedes-Benz, N.A.*, Master File No. 93-96 (JWB) (D.N.J.) (co-counsel) ($75 million settlement); *Princeton Economics Group, Inc. v. AT&T.*, Docket No. L-3221-91 (N.J. Super. Ct.) (lead counsel) ($95 million settlement); *Garcia v. General Motors*, Docket No. L-4394-95 (N.J. Super. Ct.) (liaison counsel) ($25 million settlement).

securities fraud and consumer fraud class actions, for over 15 years. Before joining LDG, Mr. Greenberg was a partner at one of New Jersey's largest law firms and a law clerk for Justice Daniel J. O'Hern of the Supreme Court of New Jersey.

Mr. Greenberg has served as co-lead counsel in numerous class action cases, including *Varacallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005), an insurance sales practices case that resulted in a nationwide class settlement worth over $750 million, a highly valuable nationwide settlement in *In re Samsung DLP Television Class Action Litigation*, Civil Action No. 07-2141(GEB) (MCA) (D.N.J.), and a four-state settlement that afforded full benefit of the bargain relief to consumers (resulting from Mr. Greenberg's efforts as co-lead counsel in constituent New Jersey and Pennsylvania cases) in *Pedersen v. Ford Motor Co.*, No. GIC 821797 (Cal. Super Ct.). Mr. Greenberg was also instrumental in *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.), where LDG, as co-lead counsel, achieved a $193 million settlement just three business days before trial was to begin. Mr. Greenberg and LDG are currently co-lead counsel in *In re STEC, Inc. Securities Litig.*, No. cv-09-1304 (JVS) (C.D. Cal.).

In the antitrust area, Mr. Greenberg has served as liaison counsel for the commercial cases in *In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663, Civil Action No. 04-5184(FSH) (D.N.J.), which has resulted to date in partial settlements totaling over $200 million for a nationwide class. He is also part of the plaintiffs' counsel's team in *Cooper v. Aetna Health*, Civil Action No. 07-3541(SRC)(PS), and *Franco v. Connecticut General Life Ins. Co.*, Civil Action No. 07-6039(SRC)(PS), in which antitrust claims have played a central role. Mr. Greenberg is also the co-author (among his many other publications) of "25 Years of the New Jersey Antitrust Act," 26 *Seton Hall L. Rev*. 637 (1996).

- **<u>Steven J. Greenfogel</u>**

Mr. Greenfogel is counsel to LDG and is resident in the firm's Philadelphia office. Throughout his nearly 40 year legal career, Mr. Greenfogel has specialized in class action antitrust litigation, including many of the most significant multidistrict class action price-fixing cases of modern times.  He has served as co-lead counsel in *In re Chain Link Antitrust Litig.*, Master File CLF-1 (D.Md); *In re Industrial Silicon Antitrust Litig.*, 95-2104 (W.D.Pa) (which he tried to verdict), and *In re Isostatic Graphite Antitrust Litig.*, No. 2000-cv-4965 (E.D.Pa).  Mr. Greenfogel also served as one of the main trial counsel, as well as co-chair of discovery, in *In re High Pressure Laminates Antitrust Litig.*, No. 00-MD-1368(CLB) (S.D.N.Y.) (which was tried to verdict) and *In re Carbon Dioxide Antitrust Litig.,* MDL 940 (M.D. Fla) (which settled after jury selection).  In addition to being co-chair of discovery in *In re Infant Formula Antitrust Litig.*, Master File No. MDL 878 (N.D. Fla), Mr. Greenfogel served as one of plaintiff's trial counsel (the case settled after jury selection).

Mr. Greenfogel has served as a member of Plaintiffs' Executive Committee in numerous cases, including, *inter alia*, *In re Municipal Derivatives Antitrust Litig.*, MDL 1950 (S.D.N.Y. 2008*), In re Static Random Access Memory (SRAM) Antitrust Litig.,* cv-1819 (N.D. Cal 2007) and *In re Publication Paper Antitrust Litig.*, MDL 1631 (D. Ct 2004).  Mr. Greenfogel has also played a major role in numerous other multidistrict antitrust class actions, including, among many others, *O'Bannon v. National Collegiate Athletic Ass'n*, et al., 09-cv-1967 cw (N.D. Cal 2009) (co-chair of discovery); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827 (N.D. Cal 2006); *In re Direct Random Access Memory (DRAM) Antitrust Litig.*, No. 02-cv-01486-OHG (N.D. Cal); *In re  NASDAQ Market Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.) (chair of

discovery); *In re Brand Names Prescription Drugs Antitrust Litig.*, MDL 997 (N.D. Ill.); *In re Commercial Tissue Antitrust Litig.*, MDL 1189 (N.D. Fla); *Cumberland Farms v. Browning Ferris Industries, Inc*., A.A. No. 87-3717; *Superior Beverage/Glass Container Antitrust Litig.*, 89 C 5251 (N.D. Ill.); *In re Chlorine and Caustic Soda Antitrust Litig.*, 86-5428 (E.D. Pa); *In re Records and Tapes Antitrust Litig.* (N.D. Ill.); and *In re Broiler Chicken Antitrust Litig.*(N.D. Ga).

Earlier in his career from 1977 to 1980, Mr. Greenfogel served as an Assistant Attorney General in the Commonwealth of Massachusetts and was the first Chief of its Antitrust Division. He was also the author of the Commonwealth's Antitrust Law (M.G.L. 93).

**B.     The Interim Class Counsel Structure Proposed By Plaintiffs Boyer and MSC Is Proportionate to the Nature, Scope and Likely Demands of the Litigation**

Clearly, it would have been ideal had all plaintiffs' counsel been able to reach agreement on a leadership structure without the Court's intervention.  From the Movants' perspective, counsel were unable to do so, primarily because certain other movants proposed various structures that were either inefficient or failed to recognize the significant and leading efforts HBSS, Hausfeld, LDG and their co-counsel have already devoted to the advancement of this litigation.  In contrast, a leadership structure of two interim class counsel and a single liaison counsel, is more consistent with the "nature, scope and likely demands" of this litigation.  *In re Milestone Scientific Sec. Litig.*, 187 F.R.D. 165, 181 (D.N.J. 1999).  *See also Four in One Co. v. SK Foods, L.P.*, Nos. 2:08-cv-03017-MCE-EFB, 2009 WL 747160, at *3 (E.D. Cal. Mar. 20, 2009); *Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1318-19 (M.D. Fla. 2000); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 222 (D.N.J. 1999).

In numerous other recent antitrust cases, courts have appointed only two interim lead counsel for proposed classes. *See*, *e.g.*, "Case Management Order" (Dec. 12, 2011) in *In re Electronic Books Antitrust Litig.*, No. 11 MD 2293 (DLC) (S.D.N.Y.) (appointing HBSS as one of two co-leads) attached to Hausfeld Declaration, Ex. B; "Memorandum & Order" (Nov. 29, 2011) in *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 11 MD 2262 (NRB) (S.D.N.Y.) (appointing Hausfeld as one of two-co-leads for direct purchaser class) attached to Hausfeld Declaration, Ex. C; "Order" (Jan. 20, 2011) in *In re Polyurethane Foam Antitrust Litig.*, (MDL No. 2196) (N.D. Ohio) attached to Hausfeld Declaration, Ex. D; "Memorandum Opinion & Order" (March 13, 2009) in *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869 (D.D.C.) (substituting Hausfeld as one of two co-leads) attached to Hausfeld Declaration, Ex. E; "Order Appointing Interim Class Counsel" (March 28, 2008) in *In re Transpacific Passenger Air Transportation Antitrust Litig.*, MDL No. 1913 (N.D. Cal.) (order appointing two co-leads; Hausfeld later substituted in as one of them) attached to Hausfeld Declaration, Ex. F; "Pretrial Order No. 3" (July 13, 2007) in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M: 07-cv-1827 (SI) (N.D. Cal.) attached to Hausfeld Declaration, Ex. G; "Order Appointing Interim Class Counsel" (Dec. 18, 2006) in *In re Int'l Air Transportation Surcharge Antitrust Litig.*, No. M 06-cv-01793 CRB (N.D. Cal.) (order appointing two co-leads; Hausfeld later substituted in as one of them) attached to Hausfeld Declaration, Ex. H.

As in these other complex antitrust cases, plaintiffs Boyer and MSC have concluded that the nature, scope and likely demands of this complex antitrust litigation would benefit from two of the most experienced and qualified class counsel antitrust firms in the United States serving as class counsel, and one of the most experienced and qualified New Jersey law firms serving as

liaison counsel, particularly given the resources and experience of the proposed firms.[10]  The six

related actions filed to date all allege a complicated scheme to rig tax sale certificate auctions in

New Jersey, and possibly elsewhere.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs Boyer and MSC respectfully request that the Court

appoint Hausfeld LLP and Hagens Berman Sobol Shapiro LLP as interim class counsel and Lite

DePalma Greenberg LLC as interim liaison counsel.

Dated:  June 8, 2012                                    **LITE DePALMA GREENBERG, LLC**

                          By:    /s/ Bruce D. Greenberg
                                 Allyn Z. Lite
                                 Bruce D. Greenberg
                                 Two Gateway Center, Suite 1201
                                 Newark, NJ 07102-5003
                                 Telephone: (973) 623-3000
                                 Email: bgreenberg@litedepalma.com

                                 **LITE DEPALMA GREENBERG, LLC**
                                 Steven J. Greenfogel
                                 1521 Locust Street
                                 Philadelphia, PA 19102
                                 Tel: 215.564.5182
                                 Fax: 215.569.0958

---

[10]   Plaintiffs Boyer and MSC obviously believe that two class counsel and a single interim liaison counsel is appropriate given the nature and complexity of this case.  However, as set forth in the Berman Declaration, in the extensive negotiations with other plaintiffs' counsel preceding this motion, and in a good faith effort to reach consensus on a leadership structure, HBSS and Hausfeld proposed various leadership structures, including a structure that would have provided the law firm of Trujillo, Rodriguez & Richards, LLC ("TRR"), a co-liaison counsel position with LDG (see, e.g., May 10, 2012 order in Yates Construction Co., Inc. v. Sigma Corp., Civil No. 12-169-AET-LHG and attached to the June 8, 2012 Declaration of Bruce Greenberg filed concurrently herewith, in which Court appoints co-liaison counsel).  As the Court is likely aware, TRR, like LDG, is a well-respected and qualified firm, and given their New Jersey presence, would have made a fine co-liaison counsel, as would Williams, Cuker, Berezofsky, counsel for Boyer.  It would be inappropriate, however, for the Court to appoint a firm as sole lead counsel in this case that filed a late complaint mirroring the allegations and language of previously filed complaints – such as Boyer's and MSC's – and that has provided the Court with no record or detail of any significant independent investigation and pursuit of the underlying claims, unlike the extensive efforts undertaken by counsel for Boyer and MSC and detailed herein.

sgreenfogel@litedepalma.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (admitted *pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
Email: steve@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jason A. Zweig (admitted *pro hac vice*)
One Penn Plaza, 36th Floor
New York, NY 10119
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email: jasonz@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Jennifer Fountain Connolly (admitted *pro hac vice*)
629 K St., NW, Suite 300
Washington, DC 20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455
Email: jenniferc@hbsslaw.com

**HAUSFELD LLP**
Michael D. Hausfeld (admitted *pro hac vice*)
James J. Pizzirusso (admitted *pro hac vice*)
Seth R. Gassman (admitted *pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeldllp.com
jpizzirusso@hausfeldllp.com
sgassman@hausfeldllp.com

*Proposed Interim Class Counsel*

**STARR, GERN, DAVISON & RUBIN, P.C.**
Amos Gern
Jonathan J. Lerner
105 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 403-9200
Facsimile: (973) 364-1403
Email:  agern@starrgern.com
jlerner@starrgern.com

**THE WOLF LAW FIRM LLC**
Andrew R. Wolf
1520 U.S. Highway 130, Suite 101
North Brunswick, New Jersey 08902
Telephone: (732) 545-7900
Facsimile: (732) 545-1030
Email: awolf@wolflawfirm.net

*Additional Counsel for Plaintiff MSC, LLC*

**MICHAEL PERLE, LLC**
Michael R. Perle
1265 Paterson Plank Road
Secaucus, NJ 07094
Tel: 201-377-5957

**WILLIAMS, CUKER & BEREZOFSKY**
Mark R. Cuker
Woodland Falls Corporate Center
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
Telephone: 856-667-0500
Facsimile: 856-667-5133

*Additional Counsel for Plaintiff Jeanne Van Duzer Lang Boyer*

**EXHIBIT A**

| HBSS' RECENT ANTITRUST EXPERIENCE | | | | |
|---|---|---|---|---|
| **Title** | **Court** | **Docket Number** | **Position of Hagens Berman** | **Results** |
| *In re Visa Check/ Mastercard Antitrust Litig.* | USDC E.D.N.Y. | 96-cv-05238 | Co-lead counsel. | Settled for over $3 billion in cash and over $20 billion in injunctive relief, making it the largest antitrust settlement in history. |
| *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* | USDC N.D. Cal. | 02-cv-1486 PJH | Co-lead counsel for direct purchasers. | Over $325 million in settlement funds. |
| *In re Intel Corp. Microprocessor Antitrust Litig.* | D. Del. | MDL 1717 | Co-lead Counsel. | Litigation pending. |
| *McDonough, et al. v. Toys "R" Us, Inc. et al.* | USDC E.D. Pa. | 06-0242-AB | Co-lead counsel. | Litigation pending; class certified at 638 F. Supp. 2d 461 (E.D. Pa. 2009). |
| *In re Static Random Access Memory (SRAM) Antitrust Litig.* | USDC N.D. Cal. | 07-cv-01819-CW | Executive Committee Member for direct purchasers. | Over $75 million in settlement funds to date. |
| *In re TFT-LCD Antitrust Litig.* | USDC N.D. Cal. | M 07-1827 | One of eight "Tier 1" firms representing direct purchasers. | Over $450 million in settlement to date, litigation pending |
| *Pecover v. Electronic Arts, Inc.* | USDC N.D. Cal. | 08-cv-2820-CW | Co-lead counsel for indirect purchasers | Nationwide class certified, litigation pending |
| *In re Optical Disk Drive Prods. Antitrust Litig.* | N.D. Cal. | 10-cv-2143-RS | Sole lead counsel for indirect purchasers | Litigation pending |
| *In re Electronic Books Antitrust Litig.* | S.D.N.Y. | 11-MD-2293 | Co-lead counsel | Litigation pending |

316570 v1

010311-11 525928 V1

**EXHIBIT B**

| HAUSFELD'S RECENT ANTITRUST EXPERIENCE | | | | |
|---|---|---|---|---|
| **Title** | **Court** | **Docket Number** | **Position of Hausfeld** | **Results** |
| *In re Vitamins Antitrust Litig.* | USDC, D.D.C. | MDL No. 1285 | Co-Lead Counsel | Settled for more than $1 billion including jury verdict of $148.5 million after trebling. |
| *In re Hydrogen Peroxide Antitrust Litig.* | USDC E.D. Pa. | 05-cv-666 | Co-lead counsel. | Almost $100 million in total settlement. |
| *In re Air Cargo Shipping Services Antitrust Litig.* | USDC E.D.N.Y. | 06-md-1775 | Co-lead counsel. | Numerous defendants have settled for a combined total of almost $500 million, litigation pending. |
| *In re OSB Antitrust Litig.* | USDC E.D. Pa. | 06-cv-826 | Co-lead counsel. | Settled for over $120 million. |
| *In re International Air Passenger Surcharge Antitrust Litig.* | USDC, N.D. Cal. | M:06-md-01793 | Co-lead Counsel. | Settled for $200 million. |
| *In re TFT-LCD Antitrust Litig.* | USDC N.D. Cal. | M:07-1827 | One of eight "Tier 1" firms representing direct purchasers. | Over $450 million in settlements to date, litigation pending. |
| *In re Rail Freight Fuel Surcharge Antitrust Litig.* | USDC D.D.C. | 1:07-mc-00489-PLF-JMF | Co-lead counsel. | Litigation pending. |
| *In re Municipal Derivatives Antitrust Litig.* | USDC S.D.N.Y. | 08-cv-2516 | Co-lead counsel. | Settlements totaling over $85 million to date, litigation pending against remaining defendants. |
| *In re Processed Egg Products Antitrust Litig.* | USDC E.D. Pa. | 2:08-cv-04653 | Co-lead counsel. | One defendant settled for $25 million, litigation pending. |
| *In re Automotive Aftermarket Lighting Products Antitrust Litig.* | USDC C.D. Cal. | 09-ML-2007-GW (PJW) | Co-lead counsel. | One defendant settled for $25 million; litigation pending against remaining defendants. |
| *In re Vitamin C Antitrust Litig.* | USDC, E.D.N.Y. | 1:06-md-01738 | Co-lead counsel | One defendant settled for $9.5 million; litigation pending against remaining defendants. |

316570 v1

010311-11 525928 V1

| HAUSFELD'S RECENT ANTITRUST EXPERIENCE | | | | |
|---|---|---|---|---|
| **Title** | **Court** | **Docket Number** | **Position of Hausfeld** | **Results** |
| *In re LIBOR-Based Financial Instruments Antitrust Litig.* | USDC S.D.N.Y. | 11-MD-2262 | Co-lead counsel. | Litigation pending. |